## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| FLOR ESTELLA BRIONES, Individually | § | |
| and As Representative of the Estate of | § | **United States District Court** |
| JOSE CUELLAR and As Next Friend of | § | **Southern District of Texas** |
| JOSE D. CUELLAR, JR., and JUANITA | § | **FILED** |
| CUELLAR, Minors | § | **JUL 1 8 2000** |
| PLAINTIFF | § | |
| | § | **Michael N. Milby** |
| VS. | § | **Clerk of Court** |
| | § | CIVIL ACTION NO. **B-99-195** |
| THE CITY OF SANTA ROSA, and | § | |
| OFFICER JACOB L. BORJAS, | § | |
| INDIVIDUALLY and IN HIS OFFICIAL | § | |
| CAPACITY | § | |
| DEFENDANTS | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S DESIGNATION OF EXPERTS AND PRODUCTION OF REPORTS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, FLOR ESTELLA BRIONES, Individually and As Representative of the Estate of JOSE CUELLAR and As Next Friend of JOSE D. CUELLAR, JR., and JUANITA CUELLAR, Plaintiffs in the above styled and numbered cause and files this their Designation of Expert Witnesses and in connection therewith identifies the following named persons as potential experts or persons who may be called to express expert opinions in connection with this case, to wit:

Mr. Michael Sullenger
3506 Plazas del Lago
Edinburg TX 78539
(956) 316-4747

Mr. Sullenger will provide testimony relevant to how Defendant's conduct caused the incident and damages that are the subject of this action. Additionally, he will provide testimony about police policy and procedures. Please refer to his report attached as EXHIBIT "A" and his curriculum vitae attached as EXHIBIT "B".

Mr. Keith Livesay
LAW OFFICE OF KEITH LIVESAY
1050 N. Sugar Road
Pharr, TX 78577

Mr. Livesay will testify as to attorney fees. Please refer to his report attached as EXHIBIT "C", and his curriculum vitae attached as EXHIBIT "D".

## II.

FLOR ESTELLA BRIONES, Individually and As Representative of the Estate of JOSE CUELLAR and As Next Friend of JOSE D. CUELLAR, JR., and JUANITA CUELLAR reserves the right to call for direct or cross-examination any of experts that are designated by Defendants (by so designating, defendant does not necessarily attest to the truth or veracity or qualifications of those persons identified, rather, defendant so identifies potential expert witnesses whose knowledge of facts or circumstances directly or indirectly related to this case may, of necessity and substance, or acquire the expression of expert opinion).

Respectfully submitted,

LAW OFFICES OF CARLOS QUINTANA, P.C.
Neuhaus Tower, Suite 1302
200 S. 10th Street
McAllen, TX  78501
(956) 687-9729
(956) 687-9760  FAX

By:

CARLOS QUINTANA
State Bar No:  16436345

## CERTIFICATE OF SERVICE

I the undersigned from the LAW OFFICES OF CARLOS QUINTANA, P.C. hereby certify that a true and correct copy of the foregoing pleading has been mailed, certified mail, return receipt requested to the following counsels of record:

Mr. Ricardo J. Navarro
DENTON, MCKAMIE & NAVARRO
222 E. Van Buren, Suite 405
Harlingen, Texas 78550

on this the ___17___ day of _____, 2000.

CARLOS QUINTANA

# EXHIBIT "𝒜"

CébPDF – www.fasoo.com

# I、 THE UNITED STATES DISTRICT COURՐ
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE CUELLAR | & | |
| Plaintiff | & | |
| | & | |
| Vs. | & | |
| | & | Cause No, B-99-195 |
| THE CITY OF SANTA ROSA AND | & | |
| OFFICER JACOB L. BORJAS, | & | |
| INDIVIDUALLY AND IN HIS | & | |
| OFFICIAL CAPACITY | & | |
| | & | |

## AFFADAVIT IN SUPPORT OF PLAINTIFF'S CASE

BEFORE ME, the undersigned authority, personally appeared Michael A. Sullenger, a credible person known unto me who, after being duly sworn, did swear and state upon his oath as follows:

My name is Michael A. Sullenger. I am over twenty-one (21) years of age, am of sound mind, have never been convicted of a crime, and am fully competent to make and execute this affidavit. I have reviewed each of the statements referred to herein.

I have 30 years of law enforcement and 16 years security experience. This LE experience encompasses various aspects of the career field, to include dispatch communications, jail and prisoner control, patrol and investigations on the operational level. On the administrative level I have been an assistant chief of police 3 times and a chief of police twice. I hold an advanced peace officer (TECLOSE) certificate with the state of Texas as well as certifications as a classroom and firing range instructor. I am also an adjunct college professor in Criminal Justice and American Government. In addition to my LE background, which covers both the military and civilian arenas, I am.also a martial arts instructor. I've been active in the study and training of and in karate and Use of Force tactics for 40 years, and have been instructing police officers in use of force techniques, tactics, policies and procedures since 1967

In preparing this affidavit I have reviewed the following: A taped deposition of the defendant Jacob Borjas, along with his sworn affidavit. I have aiso reviewed affidavits from Esmeralda Ruiz, Benita Ruiz, Jesus Olivarez, Flor Estella Briones, Santos Perez and Eliseo Garza Robles. It is this type of information and evidence that assists experts, like myself, in the determination of facts in cases such as these. After reviewing the taped deposition and statements I have the following observations:

- Officer Jacob Borjas was acting under color of law. He attempted to make a traffic stop on the plaintiff because the latter was driving without his headlights on during the hours of darkness. Upon making contact with the plaintiff he attempted to ascertain the nature of the problem, which is consistent with his duties and responsibilities as an officer of the Santa Rosa Police Department.

CivilPDF - www.fesisa.com

- Officer Borjas began working as a police officer for the Santa Rosa Police Department (SRPD) after completing his studies at the Lower Rio Grande Valley (LRGV) Police Academy, which was located in Raymondville, Texas, and passing the State Police Officer Licensing Examination.
- The SRPD did not have a "Field Training" program in-place, known as an FTO (Field Training Officer) program, to provide new "rookie police officers" with experienced and knowledgeable oversight and training by a senior officer for a specified period of time.
- During the time frame officer Borjas worked for SRPD he was not sent to, nor did he receive, any follow-on training to enhance his knowledge and abilities in the LE career field in order to make him a more professional police officer.
- The SRPD had no policies, written or oral, regarding the proper use and application of force when arresting or detaining people.
- The SRPD had no procedures, written or oral, regarding the proper handling and investigation of complaints by citizens against its officers.
- The SRPD Chief, Gus Morales, gave little importance or concern to complaints against his officers and was himself indicated as having utilized inappropriate force.
- Statements by witnesses further re-enforce the fact that Officer Borjas was unfamiliar with the proper procedures for the application of use of force tactics.  This was brought out in the statement by Jesus Olivarez who pointed out that Officer Borjas continued to keep his knee on the back of Jose Cuellar's neck, even though Cuellar was handcuffed and detained.

It is my expert opinion that the problems involving use of force by SRPD officer Borjas stems from a combination of the above factors.  The failure on the part of Santa Rosa's Chief of Police to provide initial and ongoing training and continuing education to his officers on the many issues and areas that surround a patrolman's duties and responsibilities, along with the lack of a formal complaint and investigation system within the department.  Both of these failures lead to the practice and custom within the department that established the tolerance of and for excessive use of force.

Officer Borjas was placed in a police cruiser and sent out to begin functioning as a patrolman by himself.  He did not have the benefit of a more senior experienced officer to ride with him for the first several weeks or months in order to mentor and provide him (Borjas) with what was proper and improper conduct on the part of a police officer.  The lack of any formal procedures for investigating improper conduct by a police officer, coupled with Chief Gus Morales lack of concern when presented with complaints by citizens, also re-enforces officer Borjas' attitude and actions when making a traffic stop or conducting an interview which results in an arrest.  This failure on the part of Chief Morales also speaks to his lack of training and inexperience as a police officer and head administrator of a police department.  Such lack of discipline and training creates an atmosphere where police officials believe they can misuse their authority without consequences.   This then creates an atmosphere within the department, and an attitude indifference on the part of the department's police officers, which is demonstrated by the defendant's actions on more than one incident, regarding the proper respect of and regard for the Civil and Constitutional Rights of the citizens they are sworn "to protect and serve."

In today's society police officers and departments must be ever vigilant in their application of force when confronting the citizenry.  Police officers have broad powers that may be applied in the performance of their day-to-day duties.  These powers are easily misused when the proper

training and policy structure within a police department is missing. Such is the case with the Santa Rosa Police department. They employ young, newly graduated, inexperienced police officers and put them to work on the streets of their city without providing any additional training or senior oversight. This results when the department's chief is himself inexperienced and doesn't have the knowledge to know the importance of establishing policies on the department's use of force. It is further exacerbated by the lack of a formal complaint system, which, in and of itself would have sent a message to the department's officers that improper conduct would not have been tolerated. Even if such a formal policy and program had existed, it's only as strong as its enforcement. Statements by witnesses, as well as Officer Borjas own deposition, both indicate Chief Morales was not concerned with handling or investigating allegations of police misconduct or abuse made against his officers.

The affidavit provided to me for my review, and in particular. the affidavit of Benita Ruiz suggests to me that the use of excessive force by officers was tolerated by the chief to the extend that it was excepted as being the custom and practice.

Officer Borjas admits in his deposition that the chief of police did not investigate the incident involving Benita Ruiz and Jose Cuellar. It is this type of disregard and indifference that promotes the use of excessive force against citizens. This is what causes and promotes the custom and practice, in a police department, of excessive use of force. Such appears to have been the case with the Santa Rosa Police Department during the month of December 1997.

Finally, the description given by officer Borjas regarding the arrest and physical confrontation with Jose Cuellar are not consistent with the injuries Mr. Cuellar suffered. This comment is based on an understanding of what took place between Mr. Cuellar and Officer Borjas, based on Borjas testimony, and a picture of Mr. Cuellar that showed considerable physical damage to the whole left side of Cuellar's face and head. The injuries shown in the picture and suffered by Jose Cuellar were more than likely the result of a continuous beating, as opposed to having stuck the ground during a fall.

I reserve the right to amend this affidavit based on any new information or evidence that might exist elsewhere, or may be forth coming in the future.

Michael A. Sullenger

SIGNED and SWORN BEFORE ME, the undersigned authority. on this the 17th day of July 2000.

VERONICA PARTIDA
Notary Public,
State of Texas My
Comm. Exp. 9-30-2000

Notary Public, in and for the State Of Texas

EXHIBIT " $\mathcal{B}$ "

# CURRICULUM VITAE OF
# MICHAEL A. SULLENGER

## Education:

- Bachelor of Science, Criminal Justice Administration, Pan American University, Edinburg, Texas.
- Masters of Science, International Relations, Troy State University, Troy, Alabama.
- Additional Criminal Justice graduate studies at UT Pan-American and the Unversity of Southern California.

## Certifications:

- Texas Commission on Law Enforcement Officer Standards & Education Certifications:
  - Advanced Police Officer;
  - Crime Prevention Inspector;
  - General Classroom
  - Firearms Instructor
  - City and County Jailer/Administrator.
- Illinois Emergency Vehicle Operator Instructor.
- Illinois Certified Police Officer.
- Emergency Medical Technician – Intermediate Level.
- Cooper Institute Fitness Instructor.
- Defensive and Combative Tactics Instructor.

## Current Employment:

South Texas Community College
3201 West Pecan Ave.
McAllen, Texas 78502
(956) 928-3581 Office
(956) 688-2052 Fax
masulll@stcc.cc.tx.us e-mail

Adjunct Professor in American Government, Criminal Justice and Martial Arts.

## Publications:

- "Air Base Ground Defense," Military Police Magazine, May 1989
- "American Karate System," Student Handbook, First Edition, Fast Print, Rantoul, Illinois, 1992
- "The Punchline," American Karate System quarterly newsletter, 1994 to 1999

EXHIBIT " $\underline{C}$ "

CutePDF - www.faxio.com

LAW OFFICES OF

# Keith C. Livesay

1050 North Sugar Road, Suite 200
Pharr, Texas 78577
Telephone: (956) 782-8477
Telecopier: (956) 702-9446



**BOARD CERTIFIED--CIVIL APPELLATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION**

July 14, 2000

Hand Delivery

Mr. Carlos Quintana
**LAW OFFICE OF CARLOS QUINTANA**
1302 Neuhaus Tower
McAllen, Texas 78501

Re: Civil Action No. B-99-195: Briones v. City of Santa Rosa

Dear Carlos:

You requested that I provide you with a written report concerning attorney's fees and the propriety of an attorney's fee award. In rendering this opinion, I have review the non-privileged material in the file. This opinion is also based on my experience and training, along with practicing in the Rio Grande Valley.

The fundamental method to calculate attorney's fees for civil rights cases is the "loadstar" method, i.e. the number of hours multiplied by a reasonable hourly rate. As for the number of hours required to successful prosecution of this matter in the trial court, I would estimate that number of hours would be required is between 250 and 325.

This calculation is based on the tasks which are necessary to take such a case to trial. Some of these tasks are obtaining medical record, preparing and amending pleadings, preparation of responses to requests for initial disclosures, preparation of written discovery, answering written discovery, preparation for and attendance at depositions, responses to motion, preparation of pre-trial order, and presentation at trial. Furthermore, it is quite apparent to me that Defendants' Counsel intend to make the prosecution of this lawsuit expensive. They have filed an arguably frivolous motion for summary judgment, seeking a stay of discovery. They also engaged in bad faith conduct at the mediation, then seek to strike the mediator's report when he informs the court of such.

As for a reasonable hourly rate, the standard hourly rate of a trial attorney with ten (10) years experience on the plaintiff's side is $150 an hour. This is the standard rate which is charged in the Rio Grande Valley. Some plaintiff's attorneys receive more, and some receive less, but I believe that $150 is reasonable in this case. I do not believe the hourly rate of a defense lawyer, representing insurance companies, represents a fair comparison, because such rate are kept low and because their work is generally steadier and not contingent upon prevailing.

Courts have also held that this loadstar approach can be raised or lowered, premised on the twelve "Johnson"[1] factors:

  (1)   the time and labor involved;

  (2)   the novelty and difficulty of the questions;

  (3)   the skill required to perform the legal service properly;

  (4)   the preclusion of other employment by the attorney due to acceptance of the case;

  (5)   the customary fee;

  (6)   whether the fee is fixed or contingent;

  (7)   time limitations imposed by the client or the circumstances;

  (8)   the amount involved and the results obtained;

  (9)   the experience, reputation, and ability of the attorneys;

  (10)  the undesirability of the case;

  (11)  the nature and length of the professional relationship with the client; and

  (12)  awards in similar cases.

---

[1]Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir. 1974).

Such factors are considered by the Fifth Circuit and the courts in the Southern District of Texas.

In my opinion as an expert, the loadstar figure obtained in this case should be multiplied by 1.5 to obtain a fair and reasonable attorney's fee for representation through trial. The questions involved in any civil rights case, while generally not novel, are always difficult, as the law is complicated and changing periodically. A high degree of skill, both factually and legally, is required to prosecute such cases; a car accident plaintiff's attorney would generally be unable to prosecute them. Such an increase is also justified by your reputation as a smart litigator and tough negotiator. While I do not know the particulars of your circumstances with regard to other work, federal courts are generally stricter than state court with regard to deadlines, as having cases moved along the docket. Accordingly, time spent on this case precludes time spent on other cases, and a hurried approach is usually necessary. The fee in this matter is contingent upon prevailing at trial, as I doubt that the Estate possesses sufficient assets to pay you. Civil rights cases are generally undesirable for several reasons. First, citizens view the police with respect, and thus it is generally difficult to convince the jury that the police were wrong. Second, it is also generally difficult to convince a jury to feel sympathy for anyone accused of committing a crime. Third, the defendants in such cases use dilatory and/or bad faith tactics to increase the costs, such as motions for summary judgment, stays of discovery, interlocutory appeals, etc. This has already occurred herein. I also believe such an award would be consistent with awards in similar cases.

For the calculation of a reasonable attorney's fee for any appeal in this matter, the same methodology would be used. For an interlocutory appeal in this case, plaintiff's counsel would be required to spend approximately fifty (50) to seventy five (75) hours. This time is based on interlocutory appeals, in both state and federal court, which I have performed in the past. Among the activities appellate counsel would be required to preform would be to review the record, research the law, and preparing the brief according to the Fifth Circuit's strict briefing rules.

A reasonably hourly rate for an appeal would be $200 per hour. A higher hourly rate for appellate work than that paid to trial attorneys is justified for various reasons. In the Rio Grande Valley, there are only five (5) attorneys who regularly perfect appeals and practice before appellate courts. Because this is not a wide practiced specialty, a higher hourly rate is justified. Again, I do not believe the hourly rate of a defense lawyer, representing insurance companies, represents a fair comparison, because such rate are kept low and because their work is generally steadier and not contingent upon prevailing.

4

For an appeal from the merits, plaintiff's counsel would be required to spend approximately one hundred and fifty (150) to two hundred (200) hours. This time is based on appeals, in both state and federal court, which I have performed in the past. Much the same activities would be required to be performed in such an appeal as it would in an interlocutory appeal. However, more time would be involved in such an appeal on the merits than an interlocutory appeal because more is involved. The appellate attorney would be required to review the record (which is longer) in greater detail. Furthermore, more issues can be raised in an appeal from the merits than in an interlocutory appeal, requiring more research. Again, the reasonably hourly rate for such work would be $200 per hour.

Using the "Johnson" factors, this time should be multiplied by a loadstar factor of 1.3 to obtain a reasonable attorney's fee for appellate work. Again, civil rights law is complex and difficult, even if the questions are not novel. Numerous cases from all around the country must be reviewed. A great deal of skill is required to properly present an appeal, especially complying with the rules and procedures of the Fifth Circuit. Because of the strict deadlines involved, working on the appeal precludes working on any other case, including hourly rate cases. Again, the fee is contingent; unless the plaintiff prevails, the appellate attorney will not receive any money. Strict time limitations are imposed by the Fifth Circuit; absent exceptional circumstances, a party will have a maximum of sixty (60) days to complete the brief. Such cases are very undesirable, as they require a great deal of time to present. And while the Fifth Circuit generally rules expeditiously after the case is submitted, the case is generally not submitted for approximately nine months to a year.

Please contact me if you need additional information.

Sincerely,

**LAW OFFICES OF KEITH C. LIVESAY**

KEITH C. LIVESAY, ESQUIRE

KCL:ms

EXHIBIT "*D*"

C64PDF – www.fes4o.com

# CURRICULUM VITAE OF KEITH C. LIVESAY

## LEGAL EDUCATION:

Graduate, *cum laude*, Baylor School of Law, Waco, Texas.

## JUDICIAL CLERKSHIP:

Court of Appeals for Second Supreme Judicial District (Fort Worth, Texas). Clerked for Hon. John G. Hill, Justice.

## LICENSED BY:

Supreme Court of Texas
Fifth Circuit Court of Appeals
Eleventh Circuit Court of Appeals
United States Supreme Court

## CERTIFICATION:

Board Certified, Civil Appellate Law, Texas Board of Legal Specialization

## CURRENT EMPLOYMENT:

**Livesay Law Office**
1050 North Sugar Road, Suite 200
Pharr, Texas  78577
Tel: (956) 782-8477
Fax: (956) 702-9446

Specializing in trial, legal research and appellate practice, and representation of individuals and corporations before trial and appellate courts concerning such matters.

## PUBLICATIONS:

*Presentation of "No Evidence" and "Insufficient Evidence" Points of Error on Appeal of Jury Trials,* 54 TEX. B.J. 878 (1991)

*"Oops, You Weren't Suppose to Get That": A Practical Guide for Inadvertent Production of Privileged Documents,* 53 TEX. B.J. 934 (1990)(with Barbara Nellermore)

*Appeal of a State Summary Judgment: A Practical Guide for Texas Attorneys,* 52 TEX. B.J. 934 (1989)


## REPRESENTATIVE CASES:

Balogh v. Ramos, 978 S.W.2d 696 (Tex. App.–Corpus Christi 1998, pet. denied)

Gutierrez v. Lone Star National Bank, 960 S.W.2d 211 (Tex. App.–Corpus Christi 1997, pet. denied)

Palomo v. State, 925 S.W.2d 329 (Tex. App.–Corpus Christi 1996, no p.d.r.)

Schuller v. Swan, 911 S.W.2d 396 (Tex. App.–Corpus Christi 1995, no writ)

Winston International Electronics, Inc. v. Rio Radio Supply, Inc., 726 S.W.2d 161 (Tex. App.–Corpus Christi 1986, writ ref'd n.r.e.)

CutePDF - www.fastio.com