United States District Court
Southern District of Texas
FILED

SEP 25 2000

Michael N. Milby
Clerk of Court



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOSE CUELLAR | § | |
| | § | |
| VS. | § | CAUSE NO. B-99-195 |
| | § | |
| THE CITY OF SANTA ROSA, | § | |
| AND OFFICER JACOB L. BORJAS, | § | |
| INDIVIDUALLY AND IN HIS | § | |
| OFFICIAL CAPACITY | § | |

## DEFENDANT CITY OF SANTA ROSA'S OBJECTIONS TO MOTION TO STRIKE ELISEO GARZA ROBLES' TESTIMONY AS PLAINTIFF'S SUMMARY JUDGMENT PROOF

May It Please the Court:

NOW COMES the CITY OF SANTA ROSA and JACOB BORJAS, Individually and Officially, (hereafter "CITY DEFENDANTS") and file this Motion to Strike certain summary judgment evidence contained in Plaintiff's responsive filings to the CITY DEFENDANTS' Motion To Dismiss or For Summary Judgment.

### SUMMARY OF ARGUMENT

CITY DEFENDANTS object to the Court's consideration of certain portions of Plaintiff's supplemental summary judgment evidence, in response to the dispositive motion filed by CITY DEFENDANTS. See Plaintiff's First Supplement to Their Motion to Continue Summary Judgment Hearing and Opposition to Defendants' Motion for Summary Judgment and To Stay All Discovery.

Such evidence, as more specifically outlined below, does not satisfy the requirements of the Rules of Civil Procedure or of the Federal Rules of Evidence and is, therefore, objectionable. Consequently, such evidence should be stricken and ignored by the Court in evaluating the dispositive motion before the Court.

**PROCEDURAL HISTORY**

THE CITY OF SANTA ROSA DEFENDANTS filed its Motion to Dismiss or for Summary Judgment (hereafter "dispositive motion") on or about May 25, 2000. It asserts, among other things, BORJAS' entitlement to qualified immunity.

Plaintiffs filed their Motion to Continue Summary Judgment Hearing and Opposition to Defendant's Motion for Summary Judgment and to Stay All Discovery (hereafter "Response Brief") on June 13, 2000.

Shortly thereafter, on June 29, 2000, Plaintiff filed a Supplement (hereafter "Supplement") to his Response Brief. The Supplement included the affidavit testimony of Eliseo Garza Robles, which is intended as additional summary judgment proof responsive to the merits of the dispositive motion filed by the CITY DEFENDANTS.

**STATUS OF DISCOVERY**

The Court should further be apprized that since the filing of the initial dispositive motion, the parties have, by agreement, been engaged in deposition discovery. Plaintiff has been allowed

to depose DEFENDANT JACOB BORJAS, and CITY DEFENDANTS have deposed various alleged witnesses to the incident. Despite not being a fact witness as to underlying factual background made the basis of this suit, Eliseo Garza Robles has been deposed as well. Consequently, the parties have had access to deposition discovery and dispositive matters are ripe for a ruling on their merits by the Court.

In this regard, based on matters adduced during deposition discovery, CITY DEFENDANTS hereby file this motion to strike Plaintiff's supplemental summary judgment proof, as more specifically outlined below.

**LEGAL ARGUMENT & ANALYSIS**

1. **Eliseo Garza Robles' Testimony attributes statements and acts to Jacob Borjas That Should Be Stricken by this Court Because the Testimony is Unreliable and Garza Robles Did Not Have Personal Knowledge as Required by Rule 56 (e) and F.R.E. 602.**

Throughout the affidavit testimony of Eliseo Garza Robles, Plaintiff purports to introduce evidence attributing certain testimony and acts to DEFENDANT JACOB BORJAS. In doing so, Eliseo Garza Robles' affidavit implies that he has the requisite "personal knowledge" to support the above-referenced statement and the facts, which as he states in his affidavit are "true and correct." See Affidavit of Eliseo Garza Robles attached as Exhibit "A" (hereafter "affidavit").

Garza Robles' affidavit implies that DEFENDANT JACOB BORJAS used excessive force, and profane language in arresting him on or about March, 1998. Garza's affidavit also mentions an incident one month prior to his arrest where he claims JACOB BORJAS stated he loved to arrest persons, who avoided arrests, at gun point:

> On one occasion, approximately one month before my arrest, I went to the ex-mayor's welding shot to have some steel welded for me. While I was there, I overheard Jacob Borjas tell ex-Mayor Marroquin that the loved it when people avoided his stops and that he loved to chase people or do pursuits. He also said that he loved to take people out at gun point, his exact words being "A punto de pistola en la cabesa." The only thing the mayor did was laugh it off.

Under Rule 56 (e) "supporting and opposing affidavits shall be made on **personal knowledge**, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to matters stated therein. Caselaw is clear in that the "personal knowledge" requirement precludes affidavits based on information and belief. See *United States vs. Crispen*, 622 F. Supp. 75, 80-81 (N.D. Ill. 1985). Moreover, extrinsic evidence may be used to establish an affiant's lack of personal knowledge. *See Flair Broadcasting Corp. v. Powers*, 733 F.Supp. 179, 182-83 (S.D.N.Y. 1990) (striking affidavit because affiant's deposition established lack of personal knowledge).

The deposition testimony of Garza Robles establishes that he lacks the requisite personal knowledge for the basis of the above-referenced testimony. For instance, Garza Robles admitted that he

had been in contact with JACOB BORJAS on only two occasions: 1) At Marroquins's welding shop a month prior to his arrest and 2) When was arrested by JACOB BORJAS in March, 1998. See Exhibit A, p. 22. However, it is clear that Garza Robles does not know who JACOB BORJAS is, and therefore, whether he was present on either occasion. He simply states a gentleman by the name of "Marroquin" attributed the statement and act to JACOB BORJAS. See Exhibit A, pp. 24-25.

In fact, Garza Robles concedes that he did not know whether JACOB BORJAS made the statement at the welding shop. See Exhibit A, p. 22. He states that at the welding shop he did not notice the name on tag worn by the police officer. See Exhibit A, p. 22-23. Furthermore, Garza Robles admits that he heard no one refer to this person as "Borjas." See Exhibit A, p. 24. Garza Robles also states that it could have been another police officer that made the statement which he attributes to JACOB BORJAS. See Exhibit A, p. 23. Garza Robles admits that he has no firsthand knowledge of ever being present with Borjas at Marroquin's shop. See Exhibit A, p. 25.

With respect to his arrest, Garza Robles further concedes that he did not read the name on the tags of the arresting officers so as to identify the officer. See Exhibit A, p. 23. Nor did any officer ever refer to anyone as "Jacob" or "Jacob Borjas" that evening. See Exhibit A, p. 23. Garza Robles admits that he does

City Defendant's Motion To Strike
Plaintiff's Summary Judgment Evidence of Eliseo Garza Robles                Page 5

not know what Jacob Borjas looks like, and for that matter, admits that he truly does not know who made the statement at the welding shop or his arrest either. See Exhibit A, p. 23-24.

Therefore, it is clear that Garza Robles' testimony is not "true and correct." Rather, his testimony is supported by nothing more than mere "information and belief" and not personal knowledge. Consequently, his testimony is unreliable and cannot be considered by this Court in determining the merits of CITY DEFENDANTS' Motion to Dismiss. Due Process requires, at minimum, reliable summary judgment proof that satisfies the requisite evidentiary standards of reliability and proof.

Therefore, the above-referenced testimony of Garza Robles should be stricken, and it should not be considered in reference to whether Plaintiff have created a material issue of fact.

**2. Plaintiff Has Not Produced Sufficient Evidence to Overcome Borjas' Entitlement to Qualified Immunity.**

Because of the inadequacy of the summary judgment proof presented by Plaintiff, even after defense counsel agreed to go forward with discovery, Plaintiff is unable to provide sufficient competent summary judgement evidence to overcome DEFENDANT BORJAS' entitlement to qualified immunity. The proofs proof provided by Plaintiff's counsel are insufficient as a matter of law to create a fact issue on the matter of qualified immunity. Therefore, in connection with the dispositive motion filed by the CITY

DEFENDANTS, as well as assertion of qualified immunity by DEFENDANT BORJAS, the Court should find for BORJAS based on his entitlement to qualified immunity.

## CONCLUSION & PRAYER

THEREFORE, based on the foregoing reasons, CITY DEFENDANTS request that the Court strike Eliseo Garza Robles' above-referenced testimony attached to Plaintiff's Supplemental motion for continuance and opposition.

CITY DEFENDANTS further request and reargue the relief sought in their dispositive motion previously filed, namely that DEFENDANT BORJAS be granted his qualified immunity and that Plaintiff's lawsuit be dismissed in its entirety.

Finally, CITY DEFENDANTS request that the Court grant any such further relief, at law or in equity, to which they be entitled.

SIGNED this 25 day of September, 2000.

Respectfully submitted,

**DENTON, McKAMIE & NAVARRO**
a Professional Corporation
Bank of America Building
222 E. Van Buren, Ste. 405
Harlingen, Texas 78550
956/421-4904
956/421-3621 (Facsimile)

By: _____
RICARDO J. NAVARRO
Attorney In Charge
So. Dist. ID No. 5953
MAURO F. RUIZ
So. Dist. ID No. 23774
ATTORNEY FOR CITY DEFENDANTS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document has been sent by Certified Mail/Return Receipt Requested unless otherwise indicated, to the person(s) listed below on this 25th day of September, 2000.

Mr. Carlos Quintana            **By CMRRR No. 7000 1670 0000 0784 1896**
LAW OFFICES OF CARLOS QUINTANA
1302 Neuhaus Tower
McAllen, Texas 78501

_____
RICARDO J. NAVARRO
MAURO F. RUIZ

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | **AFFIDAVIT** |
| COUNTY OF HIDALGO | § | |

BEFORE ME, the undersigned authority, personally appeared ELISEO GARZA ROBLES, a person known to me who first duly sworn upon his oath, did depose and say:

"My name is ELISEO GARZA ROBLES, I am over twenty years of age, have never been convicted of a crime involving moral turpitude, I am fully competent to make this affidavit and have personal knowledge of the matters set forth herein. Each of the facts as set forth herein are true and correct.

My name is Eliseo Garza Robles. I am 35 years of age. I am employed as a driver for Cano Produce in Harlingen, Texas. I am also a contract musician. I reside at 213 Jesus T. Avila, Santa Rosa, Texas.

On or about March, 1998 at around 3:00 a.m. I was on my way home from the Flamingo Ball Room in Combs,Texas, where our band had played that night. As I got into Santa Rosa I drove down to Jesus T. Avila Street that leads to my house. When I got to the intersection of Jesus T Avila and Highway 106 I noticed two Santa Rosa police units. One was traveling south and the other north. The two followed me down the street to my house. I noticed the over head lights of one police vehicle come on. The lights were turned on a very short distance from my house. I proceeded to the driveway to my house since it was three house down from where they turned the lights. I drove into my driveway. As soon as I parked, the officers came running to me with their guns drawn. Jacob Borjas grabbed me by my hair, called me a mother fucker and put his gun to my head and yanked me out of the car onto the ground. The other officers also had their guns to my head. They put me on the ground and one officer put his knee on the back of my neck the other on my back, forcing their weight on me. I kept asking why I was being arrested and Officer Jacob Borjas kept telling me to shut up. That I had no rights. Officer Jacob Borjas and the two other officers picked me up then took me out of the driveway onto the street where officer Jacob Borjas again threw me to the ground and placed his knee on the back of my neck. I asked over and over why I was being arrested and he continued to tell me to shut up. He kept insisting that I was drunk and I told him that the band and I were playing at the Flamingo ball room and that I didn't drink when I play. He said that my eyes were red and that I looked like I had been drinking. I told him my eyes were red from the smoke in the bar. The other officers were holding my hands behind my back when I felt a hit to the back of my head. It came from officer Jacob Borjas who had his knee on the back of my neck. The officers then arrested and handcuffed me and put me in a police unit. As I was in the police car I noticed that Officer Jacob Borjas got in my car and started it and backed it up into the street then put the keys on the seat as if he had stopped me outside my property. My car was left there and I was taken to the La Feria plice department jail where I was booked. When we were at the police station in La Feria I asked Jacob Borjas why I was stopped and arrested. He replied saying that at 3:00 a.m. in the morning they have the right to stop whom ever they want. He also said that it was my lucky day because he could have taken me to Brownsville, where it would have been



EXHIBIT "A"

worse for me. I was charged with public intoxication. I told Borjas that I was willing to do a breathalyzer test. But he refused to give me one. I was released at around 6:00 p.m. The La Feria police department released me. I called my wife who was worried to come pick me up. Although I do not remember the names of the other officer, I am sure that their names are part of the arrest report that Officer Jacob Borjas made.

On one occasion, approximately one month before my arrest, I went to the ex-mayor's welding shop to have some steel welded for me. While I was there, I overheard Jacob Borjas tell the ex-Mayor Marroquin that he loved it when people avoided his stops and that he loved to chase people or do pursuits. He also said that he loved to take people out at gun point, his exact words being "A punto de pistola en la cabesa". The only thing the mayor did was laugh it off.

A friend of mine later told me that I should file a complaint against the officers, but I did not feel that anything would be done if I did, especially since the mayor himself was laughing at what Borjas had told him.

FURTHER AFFIANT SAYETH NOT."

_____
ELISEO GARZA ROBLES

SUBSCRIBED AND SWORN TO BEFORE ME, by the said **ELISEO GARZA ROBLES**, on this 20· day of June , 2000 to certify which witness my hand and official seal.

{SEAL}

_____
Notary Public in and for the
State of Texas

worse for me. I was charged with public intoxication. I told Borjas that I was willing to do a breathalyzer test. But he refused to give me one. I was released at around 6:00 p.m. The La Feria police department released me. I called my wife who was worried to come pick me up. Although I do not remember the names of the other officer, I am sure that their names are part of the arrest report that Officer Jacob Borjas made.

On one occasion, approximately one month before my arrest, I went to the ex-mayor's welding shop to have some steel welded for me. While I was there, I overheard Jacob Borjas tell the ex-Mayor Marroquin that he loved it when people avoided his stops and that he loved to chase people or do pursuits. He also said that he loved to take people out at gun point, his exact words being "A punto de pistola en la cabesa". The only thing the mayor did was laugh it off.

FURTHER AFFIANT SAYETH NOT."

*Eliseo Garza*
ELISEO GARZA ROBLES

SUBSCRIBED AND SWORN TO BEFORE ME, by the said ELISEO GARZA ROBLES, on this 20 day of June, 2000 to certify which witness my hand and official seal.

{SEAL}

_____
Notary Public in and for the
State of Texas

(seal: VERONICA MARTINEZ, NOTARY PUBLIC, STATE OF TEXAS, EXPIRES 05-13-2004)